McCARTER & ENGLISH, LLP
100 Mulberry Street
Four Gateway Center
Newark, New Jersey  07102
(973) 622-4444
TG(5336)
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ALIMAK HEK, INC., | : | |
| Plaintiff, | : | |
| vs. | : | Civil Action No. |
| LIFT-TECH ELEVATOR SERVICES, LLC, | : | **COMPLAINT** |
| Defendant. | : | |
| | : | |

Plaintiff Alimak Hek, Inc. ("AHI"), by and through its attorneys, McCarter & English, LLP, by way of Complaint against the Defendant Lift-Tech Elevator Services, LLC ("Lift-Tech"), states as follows:

### THE PARTIES

1.     Plaintiff is a corporation duly organized and existing under the laws of the State of Connecticut with its principal place of business in Houston, Texas.

2.     Upon information and belief, Defendant Lift-Tech is a limited liability company duly organized and existing under the laws of the State of New Jersey with its principal place of business in Jersey City, New Jersey.

## JURISDICTION

3.     Pursuant to U.S.C. § 1332, this Court has subject matter jurisdiction as the

Plaintiff and Defendant are citizens of different states and the amount in controversy, exclusive

of interest and costs, exceeds the sum or value of $75,000.

4.     Lift-Tech is subject to the specific and/or general jurisdiction of the District of

New Jersey.  The exercise of personal jurisdiction in this matter is consistent with the traditional

notions of fair play and substantial justice.

5.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a).

## BACKGROUND

6.     Plaintiff markets and distributes rack and pinion vertical access equipment for use

in construction projects, including industrial elevators, mast climbing work platforms,

construction hoists, transport platforms and material hoists.

7.     Lift-Tech is an elevator company operating out of Jersey City, New Jersey.

8.     On or about June 27, 2007, Plaintiff and Lift-Tech entered into an Agreement (the

"June Agreement"), which provided for Lift-Tech's purchase of six Champion Model US-60-

1RNV Personnel Elevators and associated equipment from AHI for a purchase price of

$1,613,782.00.  A true and correct copy of the June Agreement is attached hereto as Exhibit A.

9.     The payment terms of the June Agreement provide that 1/3 of the contract amount

was due from Lift-Tech upon equipment delivery; 1/3 of the contract amount was due 60 days

after delivery; and the remaining 1/3 of the contract amount was due 90 days after delivery.

10.     On or about August 2, 2007, Plaintiff and Lift-Tech entered into an Agreement

(the "August Agreement" and together with the June Agreement the "Sale Agreements") which

provided for Lift-Tech's acquisition of an additional 16 Champion Model US-60-1RNV

-2-

Personnel Elevators and associated equipment from AHI for a purchase price of $4,550,197.00. A true and correct copy of the August Agreement is attached hereto as Exhibit B.

11.     The payment terms of the August Agreement provide that 1/3 of the contract amount was due from Lift-Tech upon equipment delivery; 1/3 of the contract amount was due 60 days after delivery; and 1/3 of the contract amount was due 90 days after delivery.

12.     The price for the equipment set forth in the Sale Agreements included a volume discount based upon Lift-Tech's agreement to purchase and pay for 22 units.

13.     Plaintiff delivered to Lift-Tech a total of thirteen (13) of the twenty-two (22) units specified in the Sale Agreements, with Lift-Tech requesting cancellation of nine (9) units.

14.     To secure repayment of all sums due in accordance with the terms of the Sale Agreements, Lift-Tech entered into a Security Agreement, dated December 20, 2007 (the "Security Agreement"), which granted Plaintiff a security interest in the elevators and associated equipment which were the subject of the Sale Agreements (the "Collateral"). A true and correct copy of the Security Agreement is attached hereto as Exhibit C.

15.     On January 17, 2008, Plaintiff filed a UCC Financing Statement with the New Jersey Secretary of State, Department of Treasury, which perfected Plaintiff's security interest in the Collateral.

16.     Lift-Tech has paid a total of $1,508,458.04 to Plaintiff . Lift-Tech has failed to make any payment to Plaintiff since January 17, 2008.

17.     Lift-Tech has defaulted under the terms of the Sale Agreements and the Security Agreement by failing to make payments when due, in accordance therewith.

18.     Plaintiff has demanded all sums due in accordance with the terms of the Sale Agreements and the Security Agreement but Lift-Tech has failed to pay such sums to Plaintiff.

MEI 7342390v.1

19.     Pursuant to the terms of the Sale Agreements and the Security Agreement, as of May 14, 2008, the principal balance due and owing to Plaintiff from Lift-Tech is $2,206,660.99.

### FIRST COUNT
(Foreclosure of Security Interests)

20.     Plaintiff repeats and realleges the prior allegations of the Complaint as if set forth at length.

21.     To secure repayment of all sums due under the Sale Agreements, Lift-Tech executed the Security Agreement, which granted Plaintiff a security interest in the Collateral.

22.     On January 17, 2008, Plaintiff filed a UCC Financing Statement with the New Jersey Secretary of State, Department of Treasury, thereby perfecting Plaintiff's security interest in the Collateral.

23.     Lift-Tech has defaulted under the terms of the Sale Agreements by failing to make payments when due.

24.     Lift-Tech has defaulted on the terms of the Security Agreement by defaulting under the terms of the Sale Agreements.

25.     Plaintiff is the present holder of the Security Agreement.

26.     Pursuant to the Security Agreement, in the event of default, Plaintiff may foreclose on the Collateral.

27.     Plaintiff is entitled to foreclosure of its security interest in the Collateral.

28.     Plaintiff seeks to foreclose on the Collateral.

29.     The Security Agreement provides that Lift-Tech agrees to pay all of Plaintiff's costs and expenses, including Plaintiff's attorneys' fees and legal expenses incurred in connection with enforcing the Security Agreement.

WHEREFORE, Plaintiff Alimak Hek, Inc., demands that judgment be entered in its favor and against Defendant Lift-Tech Elevator Services, LLC:

      (a)     Permitting foreclosure of its security interest in the Collateral, by private sale or otherwise, and collection of all amounts due or to become due to Lift-Tech; and

      (b)     For such other relief as the Court may deem just and appropriate, including recovery of costs of suit and attorneys' fees.

## SECOND COUNT
(Breach of Security Agreement)

30.     Plaintiff repeats and realleges the prior allegations of the Complaint as if set forth at length.

31.     Under the terms of the Security Agreement, upon an event of default thereunder, Plaintiff shall have full power to sell, lease, transfer, or otherwise dispense of the Collateral.

32.     Events of default exist under the Security Agreement.

WHEREFORE, Plaintiff Alimak Hek, Inc., demands that judgment be entered in its favor and against Defendant Lift-Tech Elevator Services, LLC:

      (a)     Requiring Lift-Tech to deliver to Plaintiff all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral;

      (b)     Requiring Lift-Tech to assemble the Collateral and make it available to Plaintiff at a place designated by Plaintiff;

      (c)     Providing that Plaintiff shall have full power to enter upon the premises of Lift-Tech and take possession of and remove the Collateral;

MEI 7342390v.1

(d)    Providing that Plaintiff shall have full power to sell, lease, transfer, or otherwise deal with the Collateral; and

(e)    For such other relief as the Court may deem just and appropriate, including recovery of costs of suit and attorneys' fees.

## THIRD COUNT
### (Breach of Contract)

33.    Plaintiff repeats and realleges the allegations of the Complaint as if set forth at length.

34.    The Sale Agreements constitute valid contracts between the parties pursuant to which, inter alia, Plaintiff agreed to extend financial accommodations to Lift-Tech in exchange for Lift-Tech's repayment in accordance with the terms of the Sale Agreements.

35.    Plaintiff extended financial accommodations to Lift-Tech in accordance with the terms of the Sale Agreements.

36.    Lift-Tech has breached its contract with Plaintiff, by virtue of failing to make payments when due, in accordance with the Sale Agreements.

37.    As a result of these breaches, Plaintiff has been damaged.

WHEREFORE, Plaintiff Alimak Hek, Inc., demands that judgment be entered in its favor and against Defendant Lift-Tech Elevator Services, LLC for compensatory damages, including but not limited to, cancellation charges, the difference between the undiscounted price of the Collateral and the volume discount granted but not earned by Lift-Tech, the cost of load out, transport and restocking of the Collateral, together with costs of suit, including recovery of reasonable attorneys' fees, prejudgment and post-judgment interest and such other relief as the Court may deem just and appropriate.

-6-

## FOURTH COUNT
(Goods Sold and Delivered)

38.     Plaintiff repeats and realleges the allegations of the Complaint as if set forth at length.

39.     Lift-Tech owes Plaintiff $2,705,523.00 for goods sold and delivered by Plaintiff to Lift-Tech.

WHEREFORE, Plaintiff Alimak Hek, Inc., demands that judgment be entered in its favor and against Defendant Lift-Tech Elevator Services, LLC for compensatory damages, including but not limited to, cancellation charges, the difference between the undiscounted price of the Collateral and the volume discount granted but not earned by Lift-Tech, the cost of load out, transport and restocking of the Collateral, together with costs of suit, including recovery of reasonable attorneys' fees, prejudgment and post-judgment interest and such other relief as the Court may deem just and appropriate.

McCARTER & ENGLISH, LLP
Attorneys for Plaintiff Alimak Hek, Inc.

By: _____
THOMAS J. GOODWIN
A Member of the Firm

Dated:  June 4, 2008

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

McCARTER & ENGLISH, LLP
Attorneys for Plaintiff Alimak Hek, Inc.

By: _____
THOMAS J. GOODWIN
A Member of the Firm

Dated:  June 4, 2008

MEI 7342390v.1

# EXHIBIT A

**ALIMAK   HEK**

**May 29, 2007**

**Mr. Dominic Glenn**
**Lift Tech**
**926 North Ave.**
**Jersey City, NJ 07306**

### Alimak Hek, Inc.  Quotation Number 207TDS-168

## CHAMPION MODEL US-60-1RNU PERSONNEL ELEVATOR

### 250 FT LIFTING HEIGHT                              6,000 LB CAPACITY

We propose to furnish four (4) **new** Champion Model US-60-1RNU base units each including completely assembled enclosed car with overspeed governor/safety brake, 20 ft. of tower for 0 ft. lifting height, two doors, limit and control switches, buffers, motor and car control panel with single speed manual hand lever controls, power cable guide assembly, and base fence enclosure.

### GENERAL SPECIFICATIONS OF PROPOSED EQUIPMENT:

| | |
|---|---|
| **Capacity:** | 6,000 Lbs. or 30 men |
| **Car Size:** | 4'-8" wide x 12'-4" long x 7'- 2" high |
| **Lift Height:** | 250 Feet |
| **Power Supply:** | 480 Volts, 60 Hz, 3 - Phase, 100 amp-dedicated each car |
| **Vertical Speed:** | 175 ft./min |

### Equipment Included With Each System

| | | |
|---|---|---|
| 50– Galvanized Mast | 9 – Wall Tie-in | 290'– Power Cable |
| 1 – Cable Trolley | 2– Sets of Manuals | 1 – Drop Test |

**Purchase Price...................... $ 239,188.00 each system, $ 956,752.00 total**

**Landing Gates......$ 1,375.00/each or eighty (80) Gates....$ 110,000.00 Total**

Alimak Hek Inc.
25 Brooks Street, Suite 200
Shelton, CT 06484
Phone  (203) 513-3155
Fax     (203) 924-0000
Internet: www.alimakhek.us

000192

**ALIMAK   HEK**

### CHAMPION MODEL US-60-1RNU PERSONNEL ELEVATOR

**250 FT LIFTING HEIGHT**                                    **6,000 LB CAPACITY**

We propose to furnish two (2) **new** Champion Model US-60-1RNU base unit including completely assembled enclosed car with overspeed governor/safety brake, 20 ft. of tower for 0 ft. lifting height, two doors, limit and control switches, buffers, motor and car control panel with single speed manual hand lever controls, power cable guide assembly, and base fence enclosure.

### GENERAL SPECIFICATIONS OF PROPOSED EQUIPMENT:

| | |
|---|---|
| **Capacity:** | 6,000 Lbs. or 30 men |
| **Car Size:** | 4'-8" wide x 12'-4" long x 7'- 2" high |
| **Lift Height:** | 250 Feet |
| **Power Supply:** | 480 Volts, 60 Hz, 3 - Phase, 100 amp-dedicated each car |
| **Vertical Speed:** | 175 ft./min |

### Equipment Included With Each System

| | | |
|---|---|---|
| 50– Galvanized Mast Dual | 9 – Wall Tie-in Dual | 290'– Power Cable |
| 1 – Cable Trolley | 2– Sets of Manuals | 1 – Drop Test |

**Purchase Price.................... $ 259,765.00 each system, $ 519,530.00 total**

**Landing Gates......$ 1,375.00/each or twenty (20) Gates....$ 27,500.00 total**

**Date of Delivery – August / September 2007**

**FOB:  Houston, Texas**

Alimak Hek Inc.
25 Brooks Street, Suite 200
Shelton, CT 06484
Phone  (203) 513-3155
Fax     (203) 924-0000
Internet: www.alimakhek.us

000193

**ALIMAK   HEK**

**PAYMENT TERMS:**
1/3 of contract amount on equipment delivery
1/3 of contract amount 60 days from delivery of equipment
1/3 of contract amount 90 days from delivery of equipment

Cancellation charges would be 10% of material price based on notification received thirty days prior to delivery.

**TAXES:**
Taxes are not included in this proposal. Any federal, state, property or sales/use taxes are the responsibility of the Purchaser.

**LEAD TIMES:**
As mutually agreed.

**WARRANTY:**
One (1) year from delivery on parts

**QUOTATION TERM:**
This quotation is valid for thirty (30) days, and is subject to availability of equipment.

**CODES / REGULATIONS:** Proposed equipment meets the safety requirements of ANSI A10.4 Safety Requirements for Personnel Hoists. Local / state authorities may be required to permit installation in your area. Compliance with any codes or regulations in excess of A10.4 is not a part of this proposal

**Alimak Hek, Inc.**                                      **Lift Tech**

Submitted By: _____   Accepted By: _____

Printed Name:   A. J. Dragone              Printed Name:   Dominick Glenn

Title:   National Sales Manager           Title:   PRES.

Date:       May 29, 2007                      Date:   6-27-07.

Alimak Hek Inc.
25 Brooks Street, Suite 200
Shelton, CT 06484
Phone  (203) 513-3155
Fax      (203) 924-0000
Internet: www.alimakhek.us

# EXHIBIT  B



July 11, 2007

**Mr. Dominic Glenn**
**Lift Tech Elevator**
**926 Newark Ave**
**Jersey City, NJ 07306**

### Alimak Hek, Inc.  Quotation Number 207TDS-180 Rev. #2

## CHAMPION MODEL US-60-1RNU PERSONNEL ELEVATOR

**250 FT LIFTING HEIGHT**          **6,000 LB CAPACITY**

We propose to furnish sixteen (16) **new** Champion Model US-60-1RNU base units each including completely assembled enclosed car with overspeed governor/safety brake, 20 ft. of tower for 0 ft. lifting height, two doors, limit and control switches, buffers, motor and car control panel with single speed manual hand lever controls, power cable guide assembly, and base fence enclosure.

### GENERAL SPECIFICATIONS OF PROPOSED EQUIPMENT:

| | |
|---|---|
| **Capacity:** | 6,000 Lbs. or 30 men |
| **Car Size:** | 4'-8" wide x 12'-4" long x 7'- 2" high |
| **Lift Height:** | 250 Feet |
| **Power Supply:** | 480 Volts, 60 Hz, 3 - Phase, 100 amp-dedicated each car |
| **Vertical Speed:** | 175 ft./min |

### Equipment Included With Each System

| | | |
|---|---|---|
| 50– Galvanized Mast Dual | 9 – Wall Tie-in Dual | 290'– Power Cable |
| 1 – Cable Trolley | 2– Sets of Manuals | 1 – Drop Test |

**Purchase Price..................... $ 257,167.00 each system, $ 4,114,677.00 total**

**Landing Gates......................$ 1,361.00/each or three hundred twenty (320)**
**Gates..........................................................................$ 435,520.00 Total**

## Total Price...........................................................$4,550,197.00

**Date of Delivery -- Mid September -- 2 / Early October -- 2**
**Late October -- 2 / Early November 2007 - 2/ Late November -- 2**
**Early December -- 2 / Late December -- 2 / Early January - 2**

**FOB:  Houston, Texas**

Alimak Hek Inc.
25 Brooks Street, Suite 200
Shelton, CT 06484
Phone (203) 513-3155
Fax    (203) 924-0000
Internet: www.alimakhek.us



**PAYMENT TERMS:**
1/3 of contract amount on equipment delivery
1/3 of contract amount 60 days from delivery of equipment
1/3 of contract amount 90 days from delivery of equipment

Cancellation charges would be 10% of material price based on notification received thirty days prior to delivery.

**TAXES:**
Taxes are not included in this proposal. Any federal, state, property or sales/use taxes are the responsibility of the Purchaser.

**LEAD TIMES:**
As mutually agreed.

**WARRANTY:**
One (1) year from delivery on parts

**QUOTATION TERM:**
This quotation is valid for thirty (30) days, and is subject to availability of equipment.

**CODES / REGULATIONS:** Proposed equipment meets the safety requirements of ANSI A10.4 Safety Requirements for Personnel Hoists. Local / state authorities may be required to permit installation in your area. Compliance with any codes or regulations in excess of A10.4 is not a part of this proposal

**Alimak Hek, Inc.**                          **Lift Tech**

Submitted By: _____          Accepted By: _____

Printed Name:   A. J. Dragone            Printed Name:  Dominick Glenn

Title:   National Sales Manager          Title:  PRES.

Date:   July 11, 2007                        Date:  Aug 2 2007

Alimak Hek Inc.
25 Brooks Street, Suite 200
Shelton, CT 06484
Phone  (203) 513-3155
Fax    (203) 924-0000
Internet: www.alimakhek.us

**Lift-Tech Elevator Service, LLC**
**926 Newark Ave**
**Jersey City, NJ 07305**

# PURCHASE ORDER

**"Lift-Tech Means Performance with Quality"**

The following number must appear on all related
correspondence, shipping papers, and invoices:
**P.O. NUMBER:**

**TO:**
**Tony Dragone**
**National Sales Manager, Construction Division**
**Alimak Hek Inc.**
**25 Brooks Street, Suite 200**
**Shelton, CT 06484**
**203-513-3155**

**SHIP TO:**
**Lift-Tech Elevator Service, LLC**
**926 Newark Ave**
**Jersey City, NJ 07305**

| P.O. DATE | REQUISITIONER | SHIPPED VIA | F.O.B. POINT | TERMS |
|---|---|---|---|---|
| 7-11-07 | Dominick Glenn | Best Way | Houston, TX | 1/3 of contract amount on equipment delivery 1/3 of contract amount 60 days from delivery of equipment 1/3 of contract amount 90 days from delivery of equipment |

| QTY | UNIT | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|---|
| 16 | | **new** Champion Model US-60-1RNU base unit including completely assembled enclosed car with overspeed governor/safety brake, 20 ft. of tower for 0 ft. lifting height, two doors, limit and control switches, buffers, motor and car control panel with single speed manual hand lever controls, power cable guide assembly, and base fence enclosure.<br><br>**GENERAL SPECIFICATIONS OF PROPOSED EQUIPMENT:**<br><br>**Capacity:**   6,000 Lbs. or 30 men<br>**Car Size:**   4'-8" wide x 12'-4" long x 7'- 2" high<br>**Lift Height:** 250 Feet<br>**Power Supply:**  480 Volts, 60 Hz, 3 - Phase, 100 amp-dedicated each car<br>**Vertical Speed:** 175 ft./min<br><u>**Equipment Included With Each System**</u><br><br>50– Galvanized Mast Dual  9 – Wall Tie-in Dual  290'– Power Cable<br>1 – Cable Trolley    2– Sets of Manuals      1 – Drop Test | **$257,167.00** | **$4,114,677.00** |
| 320 | | **Landing Gates** | **$ 1361.00** | **$435,520.00** |

**Date of Delivery — October/November 2007**

| | |
|---|---|
| SUBTOTAL | **$4,550,197.00** |
| SALES TAX | |
| SHIPPING & HANDLING | |
| OTHER | |
| TOTAL | |

1. Please send two copies of your invoice.

2. Enter this order in accordance with the prices, terms, delivery method, and specifications listed above.

3. Please notify us immediately if you are unable to ship as specified.

Send all correspondence to:
**Dominic Glenn**
**Lift-Tech Elevator Service, LLC**
**926 Newark Ave**
**Jersey City, NJ 07305**

_____     8/2/07
Authorized by                                                Date

Alimak Hek Inc. Price Specification 2007

| Description | Module Number | 2007 Price List | Quantity | Total Price |
|---|---|---|---|---|
| **Champion Construction Hoist Pricing** | | | | |
| | | | | |
| **Project:** | | | | |
| **Lift Height    150     Feet** | | | | |
| **Speed             Ft/min** | | | | |
| **Capacity          lbs.** | | | | |
| | | | | |
| **Base Unit** | | | | |
| US-8002-1RN - Base unit single cage | US-8002-1RN | 276,009.10 | 0 | 0 |
| US-8002-2RN Base unit dual cage | US-8002-2RN | 526,939.76 | 0 | 0 |
| US-6002-1RN Base unit single cage | US-6002-1RN | 209,394.88 | 0 | 0 |
| US-6002-2RN Base unit dual cage | US-6002-2RN | 414,679.03 | 0 | 0 |
| US-7102-2RN Base unit dual cage | US-7102-2RN | 422,629.60 | 0 | 0 |
| US-7102-1RN Base unit single cage | US-7102-1RN | 218,086.02 | 0 | 0 |
| US-60-1RN Base unit single cage | US-60-1RN | 187,544.46 | 0 | 0 |
| US-60-2RN Base unit dual cage | US-60-2RN | 365,864.24 | 0 | 0 |
| US-60-1RNU Base unit single cage | US-60-1RNU | 187,545.49 | 1 | 187,545 |
| US-60-2RNU Base unit dual cage | US-60-2RNU | 365,864.24 | 0 | 0 |
| **Mast Section** | | | | |
| 5 FT. 28"x38" SINGLE TOWER - GALVANIZED | 306245 | 1,782.93 | 0 | 0 |
| 5 FT. 28" x 38" DUAL TOWER , 2 RACKS | 305385 | 2,286.60 | 0 | 0 |
| 5 FT. 28" x 28" TOWER (US-35&45 CWT) | 306106 | 1,514.10 | 0 | 0 |
| 5 FT. 28"X28" TOWER (uncwt'd); 1.5" Rack | 306107 | 1,560.45 | 0 | 0 |
| 5 FT. 28"X28" DUAL TOWER | 306109 | 2,017.77 | 50 | 100,889 |
| 10 FT. 28" x 16" INTERMEDIATE GUIDERAIL | 306772 | 3,728.60 | 0 | 0 |
| **Tie Ins** | | | | |
| WALL TIE, 28"x28" SINGLE - GALVANIZED | 303514 | 1,983.78 | 0 | 0 |
| WALL TIE, 28"x28" DUAL - GALVANIZED | 306055 | 2,376.21 | 9 | 21,386 |
| WALL TIE, 28"x38" SINGLE - GALVANIZED | 8410030-1 | 2,084.72 | 0 | 0 |
| WALL TIE, 28"x38" TWIN - GALVANIZED | 8410027-2 | 2,497.75 | 0 | 0 |
| RAIL TIE, 28"x16" SINGLE - GALVANIZED | 305777 | 374.92 | 0 | 0 |
| FREESTANDING TOP TIE | 305778 | 2,827.35 | 0 | 0 |
| **Cable / Wire Rope** | | | | |
| 5/8" WIRE ROPE, PER FOOT | 530001-1 | 2.58 | 0 | 0 |
| 3/4" WIRE ROPE, PER FOOT(US-7102 and US-80) | 530012-1 | 4.12 | 0 | 0 |
| CONTROL CORD (COMPOSIT) | 100018 | 17.77 | 0 | 0 |
| POWER CORD PER FOOT (4/#6) | 510201-1 | 18.13 | 290 | 5,257 |
| **Optionals** | | | | |
| GIN POLE (RNU) SOCKET ALREADY INCLUDED | 306598 | 3,193.00 | 0 | 0 |
| GIN POLE WITH SOCKET (RN) | 8400080-1 | 4,495.95 | 0 | 0 |
| Landing Gates - Swing Type | Local Purchase | 1,680.10 | 20 | 33,602 |
| "C" Gate Kit 7' wide - Car & Base Landing | Special | 19,000.00 | 0 | 0 |
| | | | | |
| **Total List Price** | | | | 348,679 |
| **Less Distributor Discount** | 18.4387% | | | -64,292 |
| **Distributor Net** | | | | $284,387 |

Price is FOB Houston, Texas Taxes not Included

# EXHIBIT  C

## SECURITY AGREEMENT

**THIS SECURITY AGREEMENT** ("this Agreement") is made as of the date written below, by and between Alimak Hek, Inc., a Connecticut corporation (referred to hereinafter as the "Secured Party"), and Lift Tech Elevator Service, LLC, a New Jersey limited liability company (hereinafter referred to as the "Debtor").

## W I T N E S S E T H :

**WHEREAS,** pursuant to two (2) agreements (being Alimak Hek, Inc. Quotation Number 207TDS-168 dated May 29, 2007 and Alimak Hek, Inc. Quotation Number 207TDS-180 Rev #2 dated July 11, 2007) by and between the Secured Party and the Debtor (the "Sale Agreements"), the Secured Party has extended credit/certain payment terms to the Debtor in connection with the sale to the Debtor of certain equipment, which equipment is identified on <u>Exhibit A</u> attached hereto and hereby incorporated herein by this reference (collectively, the "Equipment"); and

**WHEREAS,** the parties confirm the payment terms contained in the Sale Agreements; and

**WHEREAS,** to secure the full and prompt payment, performance and discharge of all obligations and liabilities of the Debtor under the Sale Agreements, including Debtor's payment obligations, the Debtor has agreed to execute and deliver this Agreement; and

**WHEREAS,** the Secured Party is relying on this Agreement and without this Agreement, the Secured Party would have been unwilling to make the Equipment and the payment terms available to the Debtor;

**NOW, THEREFORE,** in consideration of the premises contained in this Agreement, and for other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged by the Debtor, the Debtor, intending to be legally bound, hereby agrees with the Secured Party as follows:

1.    <u>**CREATION OF SECURITY INTEREST**</u>.  Debtor hereby grants to Secured Party a continuing first priority security interest in and lien upon all of the following assets of the Debtor, wheresoever located:

(a)    the Equipment; and

(b)    All accessions to, substitutions for and all replacements, products and cash and non-cash proceeds of any of the foregoing property, including, without limitation, proceeds of and unearned premiums with respect to insurance policies insuring any of the foregoing property and claims against any person for loss of, damage to, or destruction of any or all of the foregoing property (all such foregoing property being hereinafter collectively referred to as the "Collateral"),

to secure the full and prompt payment, performance and discharge of all indebtedness, obligations and liabilities of the Debtor to the Secured Party under the Sale Agreements or this Agreement, or any extension, renewal, amendment or modification of same, however created, acquired, arising or evidenced, whether direct or indirect, absolute or contingent, now or hereafter existing, or due or to become due (collectively, the "Obligations").

2.   **DEBTOR'S REPRESENTATIONS AND COVENANTS.**   Debtor hereby covenants, agrees, warrants and represents to and with the Secured Party as follows:

(a)   Debtor is a corporation validly existing and in good standing under the laws of the State of New Jersey and maintains its books and records at 926 North Avenue, Jersey City, New Jersey 07306.  Debtor agrees that all notices required to be sent or received pursuant to this Agreement shall be sent or received at such address; and any notices required to be sent to the Debtor shall be deemed properly sent and received by the Debtor when the Secured Party deposits the notices in the United States mail bearing the aforesaid address, unless Debtor notifies Secured Party of a change in said address.

(b)   (1)   Debtor is the owner of the Collateral free from any adverse lien, restriction, charge, claim, levy, security interest or encumbrance whatsoever.

(2)   No financing statement covering any of the Collateral is on file in any public office, except any that have been filed by Secured Party.

(c)   Debtor will join with the Secured Party in executing one or more financing statements (or amendments thereto) when same may be required by the Secured Party.  Where Debtor's signature is not required, Debtor hereby consents to Secured Party taking any actions and making any filings necessary to perfect its security interests.

(d)   Debtor will not sell, encumber, transfer or otherwise dispose of, or offer to sell, encumber, transfer or otherwise dispose of any part or all of the Collateral or any interest therein without the express prior written consent of Secured Party.  All risk of loss of the Collateral hereunder shall be upon Debtor.

(e)   Debtor shall at all times keep the Collateral free from any adverse liens of any kind, unpaid charges, levies, attachments, restrictions, encumbrances or security interests of any kind, except for the first priority security interest granted hereby.

(f)   Debtor shall pay when due all taxes and assessments upon the Collateral or its proceeds.

(g)   Debtor shall not change its name or its principal place of business without giving the Secured Party at least thirty (30) days' prior written notice.

(h)     Debtor agrees that upon its default under this Agreement the Collateral may be inspected and examined by Secured Party or its agents at any reasonable time, upon reasonable notice, and that Secured Party shall have the right to inspect, audit, examine, check, or make copies of, or extracts from, the books, files, accounts, and all other records of Debtor pertaining to Debtor's business or any of the Collateral.

(i)     Debtor shall preserve and maintain its corporate existence, rights, franchises and privileges in the jurisdiction of its incorporation and shall comply with the requirements of all applicable laws, rules, regulations and orders of any governmental authority, the noncompliance with which would materially and adversely affect its properties, business or credit.

(j)     Debtor shall promptly notify Secured Party of the commencement of any action, claim, suit or proceeding against Debtor in respect of the Collateral.

(k)     Debtor shall execute, or cause to be executed, and deliver to Secured Party any and all documents necessary to give effect to this Agreement and to perfect the priority of the security interest granted herein, including financing statements requested by the Secured Party.

3.      **DEFAULT; RIGHTS AND REMEDIES UPON DEFAULT**.

(a)     Any one or more of the following events shall constitute an event of default (an "Event of Default") under this Agreement: (a) failure of the Debtor to pay any amounts under the Sale Agreements when due and payable; (b) failure of the Debtor to perform, observe, or comply with any of the provisions of the Sale Agreements or this Agreement; (c) any information contained in any financial statement, application, schedule, report, or any other document given by the Debtor to the Secured Party is not in all respects true and accurate or the Debtor omitted to state any material fact or any fact necessary to make such information not misleading; (d) the Debtor is generally not paying debts as such debts become due; (e) the filing of any petition for relief under any provision of the Federal Bankruptcy Code or any similar state law is brought by or against the Debtor; (f) an application for the appointment of a receiver for, the making of a general assignment for the benefit of creditors by or the insolvency of, the Debtor; (g) the dissolution, merger, consolidation, or reorganization of the Debtor; (h) suspension of the operation of the Debtor's present business; (i) transfer of a substantial part (determined by market value) of the Debtor's property; (j) the sale, transfer, or exchange, either directly or indirectly, of a controlling interest in the Debtor; (k) the determination in good faith by the Secured Party that a material adverse change has occurred in the financial condition of the Debtor; or (l) the determination in good faith by the Secured Party that the prospect of payment of any of the Obligations is impaired for any reason.

(b)     Upon or after the occurrence of any one or more of the events of default specified in this Paragraph 3, all of the Obligations shall, at the option of Secured Party and without further notice to or demand upon Debtor of any kind, become immediately due and payable, and Secured Party shall thereupon have any and all rights and remedies after default

afforded to a secured party under the Uniform Commercial Code as adopted and in force in the State of New Jersey, together with every right and remedy available to Secured Party under any other applicable law.  In addition to, and without limiting the generality of the foregoing, Secured Party shall have the following rights and remedies after default:

       (i)    The right at any time or times, without advertisement or publication (unless required by law), to sell, lease, transfer or otherwise dispose of any or all of the Collateral at public or private sale, for cash, upon credit or upon such other terms as Secured Party deems advisable, or otherwise to realize upon the whole or from time to time any part of the Collateral in which Secured Party shall have a security interest hereunder, Debtor remaining liable for any deficiency;

       (ii)    The right to incur reasonable attorney's fees and expenses in exercising any of the rights, remedies, powers or privileges provided hereunder, and the right to pay, satisfy and discharge, or to bond, deposit or indemnify against, any tax or other lien which in the opinion of Secured Party or its counsel may in any manner or to any extent be a lien upon any of the Collateral, all of which fees, payments and expenses shall become part of Secured Party's expenses of retaking, holding, preparing for sale and the like, and shall be added to and become a part of the principal amount of the Obligations; and

       (iii)    The right to apply the proceeds realized from any collection, sale, lease, transfer or other disposition of the Collateral first to the costs, expenses and attorney's fees incurred by Secured Party for collection and for acquisition, protection, removal, storage, sale and delivery of the Collateral; secondly, to interest due upon the principal amount of the Obligations; and thirdly, to the principal amount of the Obligations.  If any deficiency shall exist or arise, Debtor shall remain bound and liable to Secured Party therefor.

Except for gross negligence or willful misconduct by the Secured Party, the Secured Party shall not be liable or responsible to Debtor in any way for the safeguarding of any of the Collateral, for any loss or damage thereto, for any diminution in the value thereof, or for any act or default of any carrier, warehouseman, forwarding agency, or other person whomsoever, but the same shall otherwise be at all times at Debtor's risk.

All rights, remedies, powers, and privileges of Secured Party hereunder are cumulative and not alternative, and may be exercised concurrently or seriatim, and are in addition to and not in lieu of any other rights of Secured Party at law, in equity, under statute or under any other agreement with Debtor.

    4.    **Indulgences Not Waivers**.  Neither the failure nor any delay on the part of Secured Party to exercise any right, remedy, power or privilege hereunder shall operate as a waiver thereof or give rise to any estoppel, nor be construed as an agreement to modify the terms of this Agreement; nor shall any waiver by Secured Party of any right, remedy, power or privilege with respect to any occurrence be construed as a waiver of such right, remedy, power or

privilege with respect to any other occurrence. No waiver by a party hereunder shall be effective unless it is in writing and signed by the party making such waiver, and then only to the extent specifically stated in such writing.

5.   **Notices.** All notices, requests and demands to or upon a party hereto shall be in writing and sent by personal delivery against receipt, overnight courier or certified mail, return receipt requested, and shall be deemed to have been validly served, given or delivered when delivered against receipt or when presented at the noticed party's address as set forth immediately following each party's signature below or to such other address as each party may designate for itself by like notice given in accordance with this Paragraph 5.

6.   **Definitions and Applicable Law.** All terms used herein shall be defined in accordance with the appropriate definitions appearing in the Uniform Commercial Code as in force in the State of Georgia, as applicable, and such definitions are hereby incorporated herein by reference and made a part hereof. This Agreement shall be governed in all respect by, and construed in accordance with, the laws of the State of Georgia, including without limitation the Uniform Commercial Code of the State of Georgia, except to the extent the laws of the State of New Jersey govern the enforcement of the Secured Party's rights in such security.

7.   **Entire Agreement.** This Agreement, together with the Sale Agreement, other documents, agreements and instruments delivered at the closing of the transaction contemplated hereby, all of even date, constitutes and expresses the entire understanding between the parties hereto with respect to the subject matter hereof, and supersedes all prior agreements and understandings, inducements or conditions, express or implied, oral or written, except as herein contained. The express terms hereof control and supersede any course of performance or usage of the trade inconsistent with any of the terms hereof. Neither this Agreement nor any portion or provision hereof may be changed, altered, waived, modified, supplemented, discharged, canceled, terminated, or amended orally or in any manner other than by an agreement in writing signed by the parties hereto.

8.   **Severability.** The provisions of this Agreement are independent of and separable from each other. If any provision hereof shall for any reason be held invalid or unenforceable, such invalidity or unenforceability shall not affect the validity or enforceability of any other provision hereof, but this Agreement shall be construed as if such invalid or unenforceable provision had never been contained herein.

10.   **Assignment; Successors and Assigns.** Secured Party may assign this Agreement to any person, firm or entity without Debtor's prior written consent. Debtor may not assign this Agreement to any person, firm or entity. The rights, remedies, powers, and privileges of Secured Party hereunder shall inure to the benefit of the successors and assigns of Secured Party, and the duties and obligations of Debtor hereunder shall bind the successors of Debtor.

11.   **Term of Agreement.** This Agreement shall continue in full force and effect until terminated in writing by mutual agreement after all of the Obligations have been fully satisfied and performed.

Page 5 of 8

12.   **Miscellaneous.**   Time is of the essence of each and every provision of this Agreement. This Agreement shall not become effective until accepted by Secured Party, notice of which acceptance is hereby waived by Debtor. Debtor hereby represents and warrants that this Agreement has been duly approved and authorized by any and all necessary corporate authority of Debtor.

13.   **Waiver.**   The Debtor hereby irrevocably and unconditionally waives, as to the obligations represented hereby, the benefit of the automatic stay provisions of any federal bankruptcy or similar federal or state law in the event of its bankruptcy, in connection with any action which the Secured Party may take after the commencement of any bankruptcy or similar proceeding concerning the Debtor.

14.   **Venue; Jurisdiction.**   The Debtor specifically consents to personal jurisdiction in the state and federal courts located within Fulton County, Georgia, which courts shall together constitute the exclusive forum in which disputes under or in connection with this Note are to be resolved. Debtor specifically submits to personal jurisdiction and waives all objections to jurisdiction and waives any claim of forum non conveniens and specifically consents to venue and jurisdiction in the referenced state and federal courts of Georgia for any action instituted in connection with this Note. Debtor hereby waives personal service of the summons, complaint and other process issued in any such action or suit and agrees that service of such summons, complaints and other process may be made by overnight courier or certified mail addressed to Borrower at the address set forth in this Note and that service so made shall be deemed completed upon the earlier of Debtor 's actual receipt thereof or three (3) days after deposit in the U.S. mails, proper postage prepaid.

NOTWITHSTANDING ANYTHING TO THE CONTRARY, NOTHING IN THIS AGREEMENT SHALL BE DEEMED OR OPERATE TO PRECLUDE LENDER FROM BRINGING SUIT OR TAKING OTHER LEGAL ACTION IN ANY OTHER JURISDICTION TO REALIZE ON THE COLLATERAL OR ANY OTHER SECURITY FOR THE OBLIGATIONS, OR TO ENFORCE A JUDGMENT OR OTHER COURT ORDER IN FAVOR OF LENDER.

IN WITNESS WHEREOF, the parties hereby set their hands and seals effective this _70_ day of December, 2007.

"SECURED PARTY"
ALIMAK HEK, INC.

By: _____
Name: _Michael J. O'Grady_
Title: _VP/CFO_          _12/20/07_

Page 6 of 8

"DEBTOR"
LIFT TECH ELEVATOR SERVICE, LLC

By
    Name: Dominick Green
    Title: President.

**EXHIBIT A**

**EQUIPMENT**

Thirteen (13) Champion Rack and Pinion Elevators Model US-60-1RNU and gates,

Serial No: A07072196
Serial No: A07072198
Serial No: A07072199
Serial No: A07072200
Serial No: A07072201
Serial No: A07072202
Serial No: A07072207
Serial No: A07072206
Serial No: A07072208
Serial No: A07072209
Serial No: A07072210
Serial No: A07072269
Serial No: A07072270

I:\Ras\Alimak\Lift\Security Agreement Draft 12-19-07.doc